The BANK OF SUSSEX COUNTY, Plaintiff,

and Charles R. Howell, Commissioner of Banking and Insurance of the State of New Jersey, Intervenor,

v.

James J. SAXON, Comptroller of the Currency of the United States, Defendant,

and Peoples National Bank of Sparta, Intervenor.

Civ. A. No. 568–65.

United States District Court
D. New Jersey.

May 17, 1966.

David M. Satz, Jr., U. S. Atty., by Barry D. Maurer, Asst. U. S. Atty., Irwin Goldbloom, Dept. of Justice, for James J. Saxon, Comptroller of the Currency of the United States.

Schenck, Price, Smith & King, by Elmer S. King, Morristown, James F. Bell, Brian C. Elmer, of Pogue & Neal, Washington, D. C., for plaintiff.

Honig & Kovach, by Emanuel A. Honig, Franklin, N. J., for Peoples Nat. Bank of Sparta.

Arthur Sills, by Marilyn Loftus Schauer, Trenton, N. J., for Charles R. Howell, Commissioner of Banking and Insurance of the State of New Jersey.

WORTENDYKE, District Judge:

The nature of this action is fully disclosed in this Court's opinion filed February 16, 1966 and reported at 251 F. Supp. 132. In that opinion this Court concluded that the cross-motions to dismiss and for summary judgment adjudicated thereby should be denied and an appropriate order was entered thereon. The denial of the motions was based upon the disclosure of factual issues requiring a plenary trial and the parties were directed to proceed with all diligence to file appropriate pleadings and pursue justified discovery toward the objective of an early trial. Compliance with that directive has been made, and in addition the plaintiff has moved for a preliminary injunction pursuant to leave therefor granted.

Plaintiff's motion for a preliminary injunction will be denied. This opinion, in lieu of findings of fact and conclusions of law, is filed in compliance with the requirements of Rule 52(a), F.R.Civ.P.

On October 11, 1963, plaintiff (hereinafter Sussex Bank), a banking corporation chartered under the Laws of the State of New Jersey, with its main office in the Borough of Franklin therein, and branches in the Borough of Sussex, and in the Townships of Vernon and Andover, applied to the Commissioner of Banking and Insurance of the State of New Jersey, pursuant to the provisions of N.J.S.A. 17:9A–20, for his approval of the establishment of a branch office of said bank at a location in Wantage Township, Sussex County, New Jersey in accordance with the provisions of N.J.S.A. 17:9A–19. That application was tentatively approved by the Commissioner subject to the effectuation by the bank of an increase in its capitalization in accordance with N.J.S.A. 17:9A–19, subd. C. Sussex Bank accordingly took steps to comply with the Commissioner's directive that its capitalization be increased.

The National Banking Act, 12 U.S.C.A. § 36(c) (2), authorizes a national banking association, with the approval of the Comptroller of the Currency, to establish and operate new branches at any point within the State in which the National Bank is situated " * * * if such establishment and operation are at the time authorized to State banks by the statute law of the State in question * * *". N.J.S.A. 17:9A–19, subd. B(3) permits a state bank in New Jersey to establish and maintain a branch office anywhere in the same county as that in which it maintains its principal office; provided that such branch be established in a municipality " * * * in which no banking institution has its principal office or a branch office." When Sussex Bank applied to the Commissioner for authority to establish and maintain a branch office in Wantage Township, Sussex Bank was eligible to receive the Commissioner's approval, subject to his requirements respecting the amount of its capitalization.

When Sussex Bank applied to the Commissioner for authority to branch, the Peoples National Bank of Sparta, New Jersey (hereinafter Peoples Bank) was a national banking association chartered by the Comptroller, with its main office in the Township of Sparta, New Jersey, where it had commenced business on August 24, 1964. On October 7, 1964, Peoples Bank applied to the Comptroller for approval of its establishment and operation of a branch at the location in Wantage Township at which Sussex Bank had previously applied to the Commissioner for permission to establish and maintain a branch. On October 13, 1964 Sussex Bank learned of the application of Peoples Bank to the Comptroller and, on that date and October 16, 1964, protests were made to the Comptroller by and in behalf of Sussex Bank and by the New Jersey Commissioner against the pending application of Peoples Bank. However, despite these protests, the Comptroller approved the application of Peoples Bank on October 26, 1964, and that bank commenced a branch banking business in a trailer at the location in Wantage Township contemplated by both banks for branch purposes. Except for oral and written communications between the Commissioner and the Comptroller, and between representatives of the banks, no steps were taken in furtherance of the protests of the action of the Comptroller until May 26, 1965 when Sussex Bank instituted the present action for a declaratory judgment that the certificate issued by the Comptroller to Peoples Bank authorizing its establishment and operation of a branch in Wantage Township be declared null and void on the ground that the Comptroller's approval was arbitrary, capricious and an abuse of discretion because Sussex Bank had, prior to the filing of the application of Peoples Bank, applied to the New Jersey Commissioner for the establishment of a branch in the same location, and because the Comptroller failed to hold a hearing upon the application of Peoples Bank pursuant to the Administrative Procedure Act.

Commencing on October 27, 1964 and continuing uninterruptedly since that date, People Bank has been continuing a branch banking business at the Wantage

Township location pursuant to the authorization of the Comptroller. Sussex Bank now moves this Court for a preliminary injunction requiring Peoples Bank to interrupt and suspend the operations of its branch bank in Wantage Township pending final hearing of this case in this Court. In connection with the instant application, affidavits have been filed in support of, and in opposition to, the relief sought. It appears from the affidavit of the Vice-President of Sussex Bank that it has lost over 30 accounts totalling approximately $200,000 which have been transferred to the Wantage branch of Peoples Bank. The affiant expresses the belief that Sussex Bank has lost other accounts because more than 80% of the depositors at the Sussex office of the Sussex Bank patronize the shopping center where the Peoples Bank has established its branch. Customers in Wantage Township normally deposit over $150,000, but, although Sussex Bank is the recipient of these deposits, affiant believes that they may be withdrawn and deposited in the Wantage branch of Peoples Bank. It is the further belief of the affiant that continued operation of the Wantage branch of Peoples Bank will divert more than 600 checking accounts involving deposits of $600,000 and 1200 savings accounts involving $1,200,-000 from Sussex Bank, which would also lose personal loans and mortgages in substantial amounts.

On the other hand, the President of Peoples Bank denies that Sussex Bank is in danger of losing accounts by transfer to Peoples Bank, and states that the small number of accounts which have been transferred were so disposed of either for the purpose of preventing the increase of each account to an amount exceeding the maximum covered by F.D.I.C. Insurance or because of customer dissatisfaction with the service rendered by Sussex Bank. This affiant denies the likelihood of transfer of a large number of accounts from Sussex Bank to Peoples Bank, and contends that Sussex Bank was motivated to its application to the Commissioner by the desire to preempt the proposed location of its branch bank with the object of excluding competitors therefrom. This affiant, moreover, represents that in reliance upon the Comptroller's approval of its application, Peoples Bank executed an agreement for a lease of business space in the shopping center where the branch is located, that the permanent building described therein has been erected and the final lease thereof has been executed. Affiant contends that Peoples Bank will be irreparably injured if it is prevented from continuing its branch business in the building because the structure is so designed that it would not be appropriate for any use other than banking. A further affidavit submitted by the Manager of the Wantage branch of Peoples Bank discloses statistics respecting the business of the branch. He states that the largest account transferred from Sussex Bank to Peoples Bank was that of a depositor who indicated dissatisfaction with the service rendered by Sussex Bank, and he expresses the opinion that Sussex Bank will not suffer irreparable injury if an injunction is denied. The opposing affidavits also disclose that proceedings have been instituted with the object of achieving a merger of Sussex Bank with another bank, and that these proceedings have elicited inquiries from concerned depositors of Sussex Bank; but affiant represents that he has had no inquiries from depositors seeking to transfer accounts from Sussex Bank by reason of the availability of Peoples Wantage Branch, except in instances where inquirers have expressed dissatisfaction with the service rendered by Sussex Bank. The same branch manager of Peoples Bank states that he was formerly employed by Sussex Bank and that he learned from conversations with its officers that the bank was not actively attempting to process its application for a Wantage Township branch, but instead was concentrating on securing approval for a branch in Andover Township, and had filed the Wantage Branch application with the primary purpose of holding that location for eventual future use. It

was the opinion of this branch manager that if no one else had applied for a branch in Wantage Township, Sussex Bank intended to attempt to secure a branch there as soon as possible; meanwhile keeping the location open for that purpose.

The foregoing affidavits consist principally of assertions and denials, opinions and contrary opinions that do not positively disclose that Sussex Bank will suffer irreparable damage if preliminary injunctive relief is denied at this time.

The principles which must guide a Court in considering an application for injunctive relief pendente lite are simple and well-established. A party seeking such relief must act promptly and effectively. Sussex Bank in this case became aware of the application of Peoples Bank as early as October 13, 1964, but except for protestations, oral and written, and other discussions, Sussex Bank waited until May 26, 1965 to institute this action and made no application for preliminary injunctive relief when its complaint was filed. Sussex Bank has been aware that Peoples Bank has been in business at its Wantage Branch since October 27, 1964. If, as I must infer, Sussex Bank did not consider injunctive relief necessary when it commenced this action, and there has been no showing since its commencement that its continuance involves either present or prospective irreparable damage to Sussex Bank, a preliminary injunction at this time cannot serve the purpose of maintaining the status quo between the parties pending final adjudication. It is rather the denial of injunctive relief at this time which will maintain such status between the parties. Indeed, the complaint failed to pray for final injunctive relief, but Peoples Bank continues to operate its branch at the risk of the ultimate adjudication which Sussex Bank seeks. If the Comptroller's approval of the Peoples Bank branch is not declared null and void, a present interruption of its branch business by the Court's intrusion would cause Peoples Bank to suffer irreparable damage. Moreover, Peoples Bank is continuing business at the Wantage Branch after full compliance with the requirements of Federal and State Law and with the unqualified approval of the Comptroller. Finally, I cannot envision, at this stage of the case, a probability that plaintiff will ultimately succeed therein.

Present in appropriate form a draft of order dismissing plaintiff's motion for preliminary injunction.